# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| KARLA LEWIS-CLARK, )<br>       Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the )<br>Social Security Administration, )<br>       Defendant. ) | CAUSE NO.: 2:14-CV-291-JEM |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff on August 19, 2015, and a Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16], filed on January 30, 2015. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On April 13, 2015, the Commissioner filed a response, and on April 28, 2015, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On July 18, 2011, Plaintiff filed an application for benefits alleging that she became disabled on June 2, 2010. Plaintiff's application was denied initially and upon reconsideration. On March 12, 2013, Administrative Law Judge ("ALJ") Angelita Hamilton held a video hearing at which Plaintiff, without representation, and a vocational expert ("VE") testified. On May 16, 2013, the ALJ issued a decision finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The ALJ made the following findings under the required five-step analysis:

1. The claimant meets the insured status requirements of the Social Security Act

through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since June 2, 2010, her alleged onset date.

3. The claimant has the following severe impairments: sciatica, fatigue, fibromyalgia, hypertension, and heart disease.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform light work with some additional limitations in that the claimant is able to occasionally lift and carry up to twenty pounds and frequently lift and carry up to ten pounds. She can stand and/or walk, for a total of six hours of an eight-hour workday and sit for a total of six hours of an eight-hour workday. She is unable to climb ladders, ropes, or scaffolds and is limited to no more than occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps or stairs. She can perform frequent fingering bilaterally. The claimant can tolerate no more than occasional exposure to extreme temperatures, wetness, humidity, and environmental irritants.

6. The claimant is capable of performing past relevant work as a license clerk, a collections clerk, and a debt collector. These jobs do not require the performance of any work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability from June 2, 2010, through the date of the decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

Plaintiff has been diagnosed with fibromyalgia, sciatica, fatigue, hypertension, and heart

disease. Plaintiff began receiving treatment from her cardiologist in February 2010 for palpitations, atrial arrhythmia, anxiety attacks, and rheumatoid arthritis. She began treatment with neurologist Julian Ungar-Sargon in January 2013 for back, foot, hip, and neck pain. He diagnosed her with compression of the spinal nerve root, carpal tunnel syndrome, fibromyalgia, and cervicogenic headache. Agency consulting physician Dr. Smejkal examined Plaintiff on October 14, 2011, and February 21, 2012, and noted limited grip strength and poor finger manipulative ability in Plaintiff's left hand.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses

the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "A reversal and remand may be required, however, if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

4

expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's Residual Functional Capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform

despite [his] limitatioSeptember 16, 2015ns." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

**A.     Credibility Assessment**

Plaintiff argues that the ALJ improperly evaluated her credibility. The Commissioner argues that the ALJ's opinion is supported by substantial evidence.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96–7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and

6

any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on her ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

The ALJ relied on Plaintiff's daily activities as an indication that she suffers fewer limitations than alleged. The ALJ noted that Plaintiff's daily activities are "not conclusive proof that she is able to sustain full-time work," but did not explain how Plaintiff's activities are inconsistent with her claimed limitations. The ALJ's characterization of Plaintiff's daily activities also differs from the evidence in the record. For example, the ALJ stated that Plaintiff gardened, but Plaintiff testified that although she wanted to do basic gardening and used to try, she needed someone to help her and even the simplest tasks took her a long time. The ALJ also mentioned Plaintiff's attendance in college classes, but did not mention that Plaintiff dropped out of her previous class because she was too sick to attend. In short, the ALJ mischaracterized Plaintiff's daily activities and omitted Plaintiff's need for assistance in performing many of them. Furthermore, the Seventh Circuit Court of Appeals has repeatedly criticized credibility determinations that are based on a plaintiff's ability to take care of her personal hygiene, children, or household chores, as these alone are not sound bases for a credibility determination. *See, e.g., Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities. The ALJ

7

here ignored [the plaintiff]'s numerous qualifications regarding her daily activities" and methods of coping with pain); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2006) ("The administrative law judge's casual equating of household work to work in the labor market cannot stand."); *Zurawski*, 245 F.3d at 887 (asserting that daily activities, such as doing laundry, helping children prepare for school, cooking, and washing dishes do not necessarily undermine or contradict a claim of disabling pain). To the extent that the ALJ was also using Plaintiff's ability to perform some activities of daily living with assistance indicate an ability to work, the Seventh Circuit has repeatedly emphasized that a person's ability to perform daily activities does not indicate an ability to work outside of the home. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The Plaintiff's] ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

The ALJ also emphasized Plaintiff's conservative treatment as a reason to conclude that she

was less than credible, but did not identify any prescribed treatment plan that Plaintiff failed to follow, and Plaintiff testified that she did not have insurance but went to the doctor as often as she could. *See Craft*, 539 F.3d at 679 ("Here, although the ALJ drew a negative inference as to [the plaintiff]'s credibility from his lack of medical care, she neither questioned him about his lack of treatment or medicine noncompliance during that period, nor did she note that a number of medical records reflected that [the plaintiff] had reported an inability to pay for regular treatment and medicine."). An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide" and "may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." SSR 96-7p, at *7; *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure [to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p).

Accordingly, this matter is being remanded for a new credibility determination. On remand, the ALJ is directed to fully consider the testimony of Plaintiff and other acceptable sources in compliance with the applicable law and directives.

**B.      Residual Functional Capacity**

Plaintiff argues that the ALJ's RFC assessment was incomplete and not properly determined.

9

The Commissioner argues that the ALJ's findings are supported by substantial evidence.

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, she must consider all of the evidence that is relevant to the disability determination and provide enough analysis in her decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to h[er] conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Plaintiff argues that the ALJ mischaracterized the reports of the consultative examining physician and failed to analyze his opinions about her hand limitations. Consulting physician Dr. Smejkal examined Plaintiff in October 2011 and found that her upper extremity strength was 5/5 in

10

her right major muscle groups but 2/5 in her left major muscle groups and that she could generate 18 kilograms of force with her right hand but only 2 kilograms with her left hand. He also found that Plaintiff had abnormal grip strength of 1/5 in her left hand with poor fine finger manipulative abilities, such that she could manipulate objects only slowly and without repetition. AR 358. Dr. Smejkal examined Plaintiff again in February 2012 and found that her upper extremity strength was 4/5 in her both major muscle groups but that she could only generate 2 kilograms of force with either hand. He found that Plaintiff had abnormal grip strength in both hands and that all of her fine finger manipulations could be performed only with difficulty and without repetition. AR 395.

The ALJ mentioned Dr. Smejkal's examinations in her opinion but she only mentioned that Plaintiff "no longer demonstrated any significant left arm weakness at that time" and did not mention Plaintiff's hand strength findings or manipulative limitations from either report, nor did she mention the changes in major muscle and hand strength between the two examinations. This omission is particularly important because the ALJ found that Plaintiff had the capacity to perform frequent fingering with both hands, but did not even mention the medical evidence specifically addressing Plaintiff's ability to grip and manipulate objects.

The ALJ's duty is to resolve inconsistencies in the evidence. *See* SSR 96-8p; 20 C.F.R. § 404.1527. The ALJ must resolve the differences and explain why she accepted one opinion over another. *See Corder v. Massanari*, No. 00 C 2714, 2001 WL 1355986, at *4 (N.D. Ill. Nov. 1, 2001) ("By failing to resolve conflicts in competing opinions . . . the ALJ left his conclusions seeking a factual basis."). The Seventh Circuit Court of Appeals has warned ALJs against cherry-picking evidence in the record to support their conclusions. "An ALJ cannot rely only on the evidence that supports her opinion." *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (quoting

11

*Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)); *see also Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ identified pieces of evidence in the record that supported her conclusion that [the plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion. This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight*, 55 F.3d at 314 (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and h[er] conclusions." *O'Connor-Spinner*, 627 F.3d at 618. In this case, the ALJ did not even mention, let alone explain how she weighed, all of the relevant findings from Dr. Smejkal's reports, did not explain how much weight she gave to them, and did not explain whether or how the reports were consistent or inconsistent with other medical evidence in the record.

Plaintiff argues that the ALJ also failed to include Plaintiff's fatigue-related limitations in her RFC, despite finding that her fatigue was a severe impairment, and failed to explain how the ALJ accounted for the limitations stemming from Plaintiff's severe impairment of sciatica in the RFC. "Both the RFC and the hypothetical [to the VE] must account for all of the plaintiff's medically determinable impairments." *Kasberger v. Astrue*, No. 06-3868, 2007 WL 1849450, at *3 (7th Cir. June 27, 2007) (citing 20 C.F.R. § 404.1545(a); *Young*, 362 F. 3d at 1002-03). The ALJ concluded that both Plaintiff's sciatica and fatigue were severe, medically determinable impairments, but she failed to explain how either were incorporated into the RFC.

In short, there is no logical bridge between the evidence and the ALJ's conclusions, and the Court is unable to trace the path of her reasoning. On remand, the ALJ is directed to fully weigh the medical evidence, explaining the weight given to the evidence in the record and how Plaintiff's medically-determinable impairments are incorporated into the RFC. The ALJ is reminded of her responsibility to develop the record, which may include ordering additional examinations or contacting medical sources to obtain records and evidence necessary to making the determination. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996)); 20 C.F.R. §§ 404.1512(d)(1), 416.919(b).

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 17th day of September, 2015.

                                                s/ John E. Martin
                                                MAGISTRATE JUDGE JOHN E. MARTIN
                                                UNITED STATES DISTRICT COURT

cc: All counsel of record